No. 22,672.

BETSEY MADDOCK, *Appellee*, v. CHARLES N. RIGGS, *Appellant*.

SYLLABUS BY THE COURT.

1. MANDATORY BAILMENT—*Neglect of Gratuitous Bailee to Remit Insurance Premiums—Lapse of Policy—Liability of Bailee.* By a series of transactions covering several years the appellant accepted from the holder of a fraternal insurance policy his monthly dues and undertook to remit the same to the fraternal association, but failed to remit the dues for one month, by which the policy lapsed and the assured was suspended. Upon the death of the assured, the appellee, who was the beneficiary named in the policy, brought suit against the appellant to recover the amount that would have been due on the policy if it had not lapsed. *Held*, that appellant, having entered upon the performance of the duty to remit the monthly assessments, became liable for any injury resulting from his misfeasance.

2. SAME—*Contract—Promise Made to One Party for Benefit of Third Party.* Upon the facts stated in the preceding paragraph, the rule is applied that a third party, not privy to a contract nor privy to the con-

sideration thereof, may sue to enforce any part of it made for his especial benefit and interest; that the promise is to be deemed made to the plaintiff if adopted by him, though he was not a party nor cognizant of it when made. (*Anthony v. Herman*, 14 Kan. 494; *Floyd v. Ort*, 20 Kan. 162; *Life Insurance Society v. Welch, as Sup't, &c.*, 26 Kan. 632.)

3. SAME—*Gratuitous Bailee—Liable for Gross Negligence Only.* The general rule is that a gratuitous bailee is liable for gross negligence only. Whether, in a particular case, this liability exists, is a question of fact for the jury.

4. SAME—*Liability Not Determined by Care Exercised with Bailee's Own Goods.* The arbitrary rule adopted by some courts that a gratuitous bailee may absolve himself from liability for loss occasioned by his misfeasance merely by proof that he has been likewise negligent with his own goods, is disapproved on the ground that it leaves out of consideration the fact that the bailee may have been in the particular instance guilty of gross negligence in the conduct of his own affairs.

5. SAME—*Care Required of Mandatary.* In the case of a mandatary, good faith requires him to exercise the same diligence that he might reasonably be expected to exercise in his own affairs, in view of the nature, value and character of the thing, the circumstances under which it is deposited, and depending sometimes upon the character and confidence and particular dealings of the parties.

6. SAME—*Evidence—Verdict—Judgment.* A general verdict and judgment against the appellant is held to be sustained by sufficient evidence.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed May 8, 1920. Affirmed.

*R. M. Hamer,* and *H. E. Ganse,* both of Emporia, for the appellant.

*W. L. Huggins, O. T. Atherton, R. E. Boynton, J. Harvey Frith,* and *Gilbert H. Frith,* all of Emporia, for the appellee.

The opinion of the court was delivered by

PORTER, J.: J. R. Maddock held a life insurance policy in a fraternal insurance association. The appellee, Betsey Maddock, was the beneficiary. Riggs, the appellant, held a policy in the same association, and for some years had acted as the agent of the association and its predecessors in collecting monthly dues from members. For several years Maddock had paid his dues each month to appellant, who promptly remitted them. In February, 1917, appellant ceased to be the authorized collector for

the association, but Maddock continued. to pay his dues to him, and without objection he continued to remit them. The rules of the association provided that such dues had to reach it before the end of the month for which they were assessed. Maddock always paid his dues to the appellant a few days before or a few days after the first of the month for which they were due, so that appellant always had from three to five weeks in which to remit them. On August 29, 1917, Maddock paid his dues to appellant for September. Appellant, however, remitted them, together with his own dues, on October 2. This was two days after they were due. The company notified him that both he and Maddock had been suspended. There was some evidence tending to show that appellant never communicated to Maddock the fact that he had been suspended, but led him to believe that his insurance was still in force; that an application blank for Maddock's reinstatement was filled out and Maddock's name signed by appellant; that upon receipt of the application for reinstatement of Maddock, the company notified appellant that Maddock would have to take a physical examination; and that appellant never notified Maddock of the fact that he had been suspended and that his policy had lapsed. In ignorance of the facts, Maddock continued until his death, in February, 1918, to pay his dues each month to the appellant, who deposited them in a trust account at the bank. The beneficiary brought this action against Riggs to recover the amount that would have been due on the policy if the premiums had been properly remitted. Two of Maddock's sons testified that appellant told them he had not notified their father of the lapsing of the policy because he "didn't have the heart" to tell him. All the correspondence with the company was through appellant. The negligence charged in the petition was his failure to properly remit the premiums paid to him by Maddock, and his wrongful concealment of the fact that the policy had lapsed, thus preventing Maddock from taking the necessary steps to be reinstated. The judgment appealed from was a general one in favor of the plaintiff for the value of the policy.

The appellant's contention is that the petition did not state and the facts did not prove a cause of action; that his only duty was to Maddock, and not to the beneficiary. The appellee relies upon the doctrine that when two parties make an agree-

Maddock v. Riggs.

ment for the benefit of a third, the latter can maintain an action directly thereon, although not a party to the agreement. In *Life Insurance Society v. Welch, as Sup't, &c.,* 26 Kan. 632, it was said:

"Now whatever may be the rule in other states, it is well settled in this state that third parties not privy to a contract, nor privy to the consideration thereof, may sue upon the contract to enforce any stipulations made for their especial benefit and interest. (*Anthony v. Herman,* 14 Kan. 494; *Floyd v. Ort,* 20 Kan. 162, 164, and cases there cited.)" (p. 641.)

(See, also, *Norman v. Rullman,* 93 Kan. 791, 145 Pac. 818; *Manufacturing Co. v. Deposit Co.,* 100 Kan. 28, 163 Pac. 1076.)

A leading case upon the doctrine that when two parties make an agreement for the benefit of a third, the latter can maintain an action directly thereon, although not a party to the agreement, is *Lawrence v. Fox,* 20 N. Y. 268. In a separate opinion, Johnson, C. J., and Denio, J., held that—

"Such promise is to be deemed made to the plaintiff, if adopted by him, though he was not a party nor cognizant of it when made." (Syl. ¶ 2.)

The opinion approved the following statement from *Brewer v. Dyer,* 7 Cush. (Mass.) 337:

"Upon the principle of law *long recognized and clearly established,* . . . that when one person, for a valuable consideration, engages with another, by a simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement. . . . It does not rest upon the ground of any actual or supposed relationship between the parties as some of the earlier cases would seem to indicate, . . . but upon the broader and more satisfactory basis, that the law, operating on the act of the parties, creates the duty, establishes a privity, and implies the promise and obligation on which the action is founded." (p. 340.)

(*Lawrence v. Fox* and *Brewer v. Dyer,* supra, were cited in the opinion in *Anthony v. Herman,* 14 Kan. 494.)

When the appellant accepted the premiums and undertook to remit them, he knew there was some beneficiary named in the policy, and also knew that it was not Maddock, the assured. It might have been Maddock's estate or some member of his family. In every insurance policy there are three parties—the assured, the beneficiary, and the insurer. The insurance was not so much for the benefit of the assured as it was for the person designated in the policy as the beneficiary; and the payments of the premium were primarily for her benefit.

The appellant seems to admit in his brief that the agent is liable to third parties for misfeasance in performance of duties, but he contends that he was guilty of nonfeasance only. The question turns upon the distinction between misfeasance and nonfeasance of an agent or bailee.

It is a principle of bailments that both custody and service of some sort are involved in each bailment. In deposits, it is said that custody is the chief purpose; in mandates it is incidental. In mandates, service is primary and custody the incident, and a mandate is defined as the bailment of something for some service upon it by the bailee gratuitously. The consideration in gratuitous bailments is the detriment to the promisee. The promisor by his undertaking prevents the promisee from securing the desired benefit at the hands of another. Until the moment the promisor has entered upon the undertaking the promisee is still at liberty to secure another to do the service. Accordingly, it has been said that a gratuitous bailee cannot be held liable for any injury arising from nonfeasance, that is, from his entire failure to perform, but may become liable for malfeasance or misfeasance by his defective performance. It is clear that if the appellant had declined to undertake the acceptance and remittance of the premiums, that would have been nonfeasance, and he would not be liable for any injury arising therefrom. But it is apparent that by a series of the same kind of transactions, as well as by the acceptance from Maddock of the particular dues which he neglected to remit, he actually entered upon and undertook the performance of the mandate, and the action is to recover for his misfeasance.

A case in point, cited by appellee, is *Osborne v. Morgan*, 130 Mass. 102, which not only recognizes the distinction between misfeasance and nonfeasance, but supports the doctrine that the third party, who suffers injury for misfeasance, may maintain his action to recover the damages. It is said in the opinion:

"It is often said in the books that an agent is responsible to third persons for misfeasance only, and not for nonfeasance. And it is doubtless true that if an agent never does anything towards carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for the nonfeasance." (p. 103.)

Maddock v. Riggs.

"Nonfeasance does not extend to the omission or failure to do some act, whereby a third person is injured after he has once entered upon the performance of his contractual obligations. For example, if an agent undertakes to perform certain acts for another and he refuses or fails to enter upon such performance, it is nonfeasance; but if he once begins the performance of such acts, and, in doing so, fails or omits to do certain acts which he should have done whereby a third person is injured, it is not a nonfeasance but a misfeasance." (2 Clark and Skyles, Law of Agency, § 596; *Orcutt v Century Bldg. Co.,* 201 Mo. 424, 449.)

It is well settled that the ordinary rules governing gratuitous bailees "are equally applicable to a mandatary or gratuitous bailee who has actually entered upon the execution of some work or service that he has undertaken to perform respecting the subject matter of the bailment." (6 C. J., Bailments, § 56.)

From the earliest cases on the subject, the general rule has been that a gratuitous bailee is liable only for gross negligence, and appellant contends that his failure to send in the premiums was not gross negligence because he exercised exactly the same diligence and care with respect to Maddock's assessments that he did with his own. While many respectable authorities may be found which regard such a showing as the true test in determining whether there has been gross negligence, the better rule is that taking such care of the property or thing as of one's own repels a presumption of gross negligence, but this may be overcome and liability fastened upon the bailee nevertheless by showing the failure to exercise the care that under all the circumstances was required of him, because, manifestly, one may take risks with his own property that he has no right to take with another's, and because it is not a question of the care exercised by him as an individual, but as a class. The rule as to the degree of care required of the appellant in this case is thus stated in 6 C. J., Bailments, § 57:

"The true measure of liability is that the bailee is bound to that degree of diligence which the manner and the nature of his employment make it reasonable to expect of him, and that anything less than this is culpable in him" [citing *Briggs v. Taylor,* 28 Vt. 180].

Many of the decisions laying down what constitutes gross negligence in a particular case state that a gratuitous bailee is bound to slight diligence only, and have stated that the measure is that degree of diligence which persons of less than

common prudence, or indeed of any prudence at all, take of their own concerns. In reference to this statement of the measure of diligence, it is said in Ruling Case Law:

"The measure, abstractly considered, has no reference to the particular character of an individual, but looks to the conduct and character of a whole class of persons. *Hence, a gratuitous bailee will not, under this interpretation, be permitted to absolve himself from all responsibility for the care of an article bailed merely by proving that he has been likewise grossly negligent with his own goods.*" (3 R. C. L., Bailments, § 26.)   (Italics ours.)

In the old case of *Doorman v. Jenkins* (1834), the plaintiff proved the delivery of the money to the defendant for the purpose of taking up a bill. The defendant was the proprietor of a coffeehouse and the account he gave of the loss was that he unfortunately placed the money in his cash box which was kept in the taproom, and that the cash box with the plaintiff's money in it, and also a larger sum belonging to the defendant, was stolen from the taproom on a Sunday. Lord Chief Justice Denman told the jury that it did not follow from the defendant's having lost his own money at the same time as the plaintiff's, that he had taken such care of the plaintiff's money as a reasonable man would ordinarily take of his own. The case is reported in 2 Ad. and Ellis, 256; 29 E. C. L. 80, where the action of the court, in leaving the question whether there had been gross negligence, to the jury, was approved. (See, also, *Coggs v. Bernard,* 1 Smith's Leading Cases, 11th ed., 173, 199.)

In *Gray et al. v. Merriam,* 148 Ill. 179, which has been regarded as a leading case, the court, while recognizing the general rule in such cases, approved the doctrine that each case must be judged by its own complexion, and that in the main "gross negligence is a question of fact upon all the evidence for the jury; and that what constitutes slight diligence or gross negligence will depend in each case upon a variety of circumstances, such as the occupation, habits, skill, and general character of the bailee." (p. 186.)

We quote further from the opinion of Judge Magruder in that case, as follows:

"Story, after stating the rule that when the bailment is for the sole benefit of the bailor, the law requires only slight diligence on the part of the bailee, subsequently adds that, in every case, good faith requires

a bailee, without reward, to take reasonable care of the deposit; 'and what is reasonable care must materially depend upon the nature, value, and quality of the thing, the circumstances under which it is deposited, and sometimes upon the character and confidence and particular dealings of the parties.' Story on Bailments, §§ 23, 62." (p. 186.)

To the same effect, see 3 R. C. L., Bailments, § 27.

In *Skelley v. Kahn,* 17 Ill. 170, the general rule recognized by an abundance of authority is stated to be that—

"A mandatary or bailee, who undertakes, without reward, to take care of the pledge, or perform any duty or labor, is required to use in its performance such care as men of common sense and common prudence, however inattentive, ordinarily take of their own affairs, and they will be liable only for bad faith, or gross negligence, which is an omission of that degree of care." (p. 171.)

In 4 A. L. R. 1196-1229 will be found a very comprehensive note upon the liability of gratuitous bailees, with a citation to many quite recent cases. Referring to the general rule that a gratuitous bailee is liable only for gross negligence, the author of the note states in his summary that the expression, gross negligence, "has received so varied a content of meaning that it has ceased to be a satisfactory formula of decision," because it leaves out of consideration every circumstance other than the bare fact of bailment and diverts "attention from the inquiry on which it properly should be centered, namely, what is the undertaking of the bailee in the particular case, as implied from the concomitant circumstances and defined by the express understanding between the parties?" (p. 1228.) The author says:

"The first article of his implied undertaking is, in the case of a depositary, that he will take the same care of the property intrusted to him as he might reasonably be expected to take of his own property of the same character; in the case of a mandatary, that he will exercise the same diligence that he might reasonably be expected to exercise in his own affairs." (p. 1229.)

In this state it has been declared in a number of cases that, "The classification of negligence into three degrees is no longer recognized." (*Railway Co. v. Walters,* 78 Kan. 39, syl. ¶ 2, 96 Pac. 346.) In *Jones v. Railway Co.,* 98 Kan. 133, 136, 157 Pac. 399, it was said:

"In the absence of statutory standards of negligence, the courts of Kansas have generally ignored the classification of negligence into the degrees of slight, ordinary and gross, and have held that in each case the

true measure is due care; that is, the care and diligence proportionate to the risk and which the peculiar circumstances of the case demand" [citing *Railway Co. v. Walters*, supra].

To the same effect, see *Logan v. Electric Co.*, 99 Kan. 381, 388, 161 Pac. 659; *Kennedy v. Railway Co.*, 104 Kan. 129, 134, 179 Pac. 314.

The modern theory, adopted by many courts, is, that there are no degrees of care or of negligence; that negligence is in all cases the same thing, namely, the absence of due care. "The tendency of modern judicial opinion is adverse to the distinction between gross and ordinary negligence." (Bradley, J., in *Railroad Company v. Lockwood*, 84 U. S. [Wall.] 357, 382.)

In *Raymond v. Railroad Co.*, 100 Me. 529, it was said in the opinion: "It seems to us therefore that the measure of duty, owed by persons in the discharge of their mutual relations, would be better expressed by the use of the term 'negligence,' if one prefers a negative definition, or 'due,' 'reasonable,' or 'ordinary' care, always having reference to the circumstances and conditions with regard to which the terms are used." (p. 535.)

In determining whether the defendant should be held responsible for the damages resulting from his failure to remit the premiums, in other words, whether he exercised due care in view of all the circumstances, it is apparent that the so-called distinction between slight, ordinary and gross negligence over which courts have quibbled for a hundred years can furnish no assistance. Of course, the law did not impose upon him the responsibility of an insurer, nor require of him the exercise of anything unreasonable. It is equally true, however, that it required him to exercise the same care that he might reasonably have been expected to employ with reference to the remittance of his own insurance premiums; and in this connection it cannot be said that he could make a partial, halfway performance of his duty; he must either have remitted or failed altogether to remit the premiums within the time they could be accepted. He forgot all about the matter and failed to forward the money until after the time had expired. Failing in his duty to forward them in time, he failed to exercise any care whatever. He was required to do something, and did nothing; the net result was gross negligence. As said in *Railway Co. v. Walters*,

supra, "The question always is, Has the care, diligence or skill demanded by the peculiar circumstances of the particular case been exercised? If so, there is no negligence. If not, there is negligence." (p. 41.) The language there used was with reference to negligence in a railway case, but the same principle applies to the present case.

The arbitrary rule adopted by some courts, that a gratuitous bailee may absolve himself from liability for loss occasioned by his misfeasance merely by proof that he has been likewise negligent with his own goods, is one to which we cannot assent. It leaves out of consideration the fact that he may have been in the particular instance guilty of gross negligence in the conduct of his own affairs. The question whether he has failed to exercise slight diligence in respect to the goods left with him by the appellant, in other words, has been guilty of gross negligence, is a question for the jury. Undoubtedly, the gratuitous bailee must exercise what many courts have termed (and not inaccurately) reasonable care, which means, in this class of bailments, the exercise of the same diligence he might reasonably be expected to exercise in his own affairs.

The appellant raised his contentions by a demurrer to the evidence and a request for an instructed verdict. No errors are pointed out in the instructions. It must be held that the appellee is entitled to maintain the action, although she was not a party to nor cognizant of the contract or arrangement between Maddock and the appellant; the law operates upon the acts of the original parties so as to establish a privity and to imply a promise and obligation on the part of the appellant in favor of the appellee. The general verdict, which includes a finding of gross negligence, is abundantly sustained by the evidence.

The judgment is affirmed.