MARK A. FRIEDERICH, Plaintiff-Appellant, *v.* BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT NO. 304, Defendant-Appellee.

Second District    No. 77-19

Opinion filed April 13, 1978.

Karl Yost, of Morrison, for appellant.

Walter C. Kilgus, of Nelson & Kilgus, of Morrison, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff appeals from the trial court's order granting the defendant Board of Education's motion to dismiss his complaint.

The plaintiff was a student at Mt. Carroll High School, administered by the Board of Education of Community Unit School District #304, Carroll County, Illinois (hereinafter referred to as the Board). Plaintiff alleges that the student participated in the school's interscholastic athletic program and as a prerequisite to doing so the Board required the plaintiff to "pay a fee for an insurance premium to cover the expense of medical treatment for injuries sustained through participation in the athletic program and it then and there became and was the duty of the defendant, Board of Education, to provide adequate insurance protection for the plaintiff."

The plaintiff was seriously injured in a football game and suffered a permanent disability, as the result of which it is alleged "he will never throughout his lifetime, be able to engage in occupations requiring physical effort."

The insurance purchased by the plaintiff under the program of the Board provided adequate medical and hospital insurance but did not provide for full permanent disability. In his suit against the Board the plaintiff seeks a judgment based on lifetime disability compensation. It is the plaintiff's theory that the Board, having undertaken to procure insurance on behalf of the plaintiff, thereby assumed the duty of furnishing "adequate" insurance, and that the Board failed in its duty to do so by providing only hospital and medical coverage, and not insurance in the nature of compensation for his disability.

■■ It is conceded by the plaintiff that to begin with the Board had no duty at all to furnish or arrange for the purchase of insurance for the plaintiff. However, section 22—15 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 22—15) provides that:

"The school board of any school district may, *in its discretion, provide medical or hospital service, or both, through accident and health insurance* on a group or individual basis, or through non-profit hospital service corporations or medical service plan corporations or both, for pupils of the district injured while participating in any athletic activity under the jurisdiction of or sponsored or controlled by the district or the authorities of any school thereof." (Emphasis added.)

The Boards of Education are thus specifically authorized to arrange for medical and hospital insurance for student athletes, at their discretion, but we do not find in the School Code any provision whereby they are authorized to provide or arrange for full and complete disability insurance, such as the plaintiff contends should have been furnished to him in this case.

■■ It may be argued that the Board was not acting under the authority of section 22—15 in this case, but was merely providing a conduit through which the individual student could obtain medical and hospital insurance at his own expense. Even if this were true, however, since there is no statutory authority to act in insurance matters, except as provided in section 22—15 of the School Code, there would be no duty on the Board to act at all in connection with insurance which exceeded the scope of section 22—15 and such duty could arise only by estoppel if the Board deliberately or negligently misrepresented the scope of the coverage. However, the plaintiff in his complaint does not bottom the duty of the Board on any alleged representations by it that it would provide disability insurance. There is no such allegation, rather the plaintiff construes the duty of the Board to furnish permanent disability insurance as arising merely from the fact that it did arrange for the plaintiff to buy the kind of insurance described in section 22—15. Even if the Board was merely acting in a clerical capacity to assist the plaintiff in buying the insurance at his own expense, section 22—15 is relevant as indicating the intended scope of that insurance, in the absence of any allegations that the Board made a definite commitment otherwise.

Plaintiff alleges in his complaint that the Board had the duty to furnish adequate insurance, but what is adequate in the sense contended for by the plaintiff depends on the extent of the injury, and this cannot be known beforehand. It appears, therefore, that the plaintiff is attempting to invoke a purely subjective test in which the duty of the defendant Board depends on the eventual need of the plaintiff. Such an obviously unfair and unpredictable standard cannot be imposed on the school community based on the fact that the plaintiff's injuries are unusually serious.

The plaintiff's allegation that the Board was obliged to furnish adequate insurance because it had arranged for the purchase of *some* insurance is

not well pleaded. Not only is it a conclusion of law, but in addition, the word "adequate" has no certain meaning and does not provide a reasonable measure or standard of liability, since it is a subjective test.

██ It appears to us that what the plaintiff is really saying in this case is that since the Board acted at all in the matter of insurance it is liable for all financial consequences that could have been assuaged by disability insurance. At oral argument, plaintiff's counsel referred to "compensation," but compensation is either statutory or contractual and there is neither contract nor statute in this case to justify the plaintiff's claim. The nearest parallel to the plaintiff's theory of recovery here is found in those insurance cases where a broker undertook to furnish insurance to the plaintiff and then failed to obtain the coverage, or obtained insufficient or defeasible insurance, not within the reasonable intention of the parties. In those cases, the broker sometimes has been held liable for a failure of his professional duty and this has even gone beyond insurance, as in the case of *Glanzer v. Shepard* (1922), 233 N.Y. 236, 135 N.E. 275, cited by the plaintiff. That case involved, however, as do all of such cases we are aware of, the exercise of a professional skill in a manner inconsistent with the expected standards of such skill or profession. In the case before us the Board is not an insurance broker and was not acting in a professional capacity in arranging for medical and hospital insurance for the plaintiff. Moreover, there is no allegation in the complaint that the plaintiff ever expressed any intent or understanding about the insurance to the defendant Board beforehand, and there is no basis for supposing that there was any desire on the plaintiff's part (or his parents' part) that a broader and more expensive policy be furnished. Indeed, it seems very improbable that the kind of insurance now contended for by the plaintiff would have been available through any source to high school students engaged in playing football.

The plaintiff's counsel intimated at oral argument that the Board had liability insurance to meet the claim, but that is obviously a far-fetched conclusion. An ordinary liability policy providing indemnity against the negligence of the Board, or its employees, resulting in physical injuries to a student or a member of the public, would provide no coverage in this situation. Indeed, plaintiff's counsel made it plain at oral argument that this case is not predicated on the circumstances of the plaintiff's injury, but entirely on the failure of the Board to furnish full and complete disability insurance to the plaintiff. The cases of misfeasance referred to by the plaintiff, however, as a basis for such a duty, are cases where there is a link between the alleged failure of duty and the injury itself, as is clearly evidenced by the distillation of the cases set out in Restatement (Second) of Torts §323 (1965), cited by the plaintiff as follows:

"One who undertakes, gratuitously or for consideration, to

render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking." (Emphasis added.)

It is clear that the situation we consider here does not fall within the above-quoted language because, as plaintiff's counsel concedes, the risk of injury was in no way increased nor the resulting harm caused by the plaintiff's lack of disability insurance. While the economic consequences of the physical injury would have been lessened had disability insurance been provided (assuming, which we doubt, that such insurance was available), its lack in no way increased the risk of the physical harm happening nor was the physical harm to the plaintiff suffered by reason of the plaintiff's reliance on such insurance. The plaintiff's case, therefore, does not appear to come within the limits of the Restatement. Indeed, we do not see that this case sounds in tort at all, since there can be no duty on the Board to furnish a type of insurance which is not within its statutory power to provide to its students.

Nevertheless, even considering this as an action properly founded on tort liability, we think it is clear that the situation falls within the exemptions to liability provided to local government entities and their employees by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—101 *et seq.*). Section 2—109 of the Act provides as follows:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Ill. Rev. Stat. 1975, ch. 85, par. 2—109.

Section 2—110 of the Act provides:

"Any liability of a local public entity established by this Act is subject to any defense that would be available to the local public entity if it were a private person." Ill. Rev. Stat. 1975, ch. 85, par. 2—110.

Section 2—201 of the Act provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." Ill. Rev. Stat. 1975, ch. 85, par. 2—201.

As noted above, the provision granting to the Board the power to

provide medical and hospital service through insurance, to its students, participating in athletic contests, recites that it is within the discretion of the Board, whether or not to provide such insurance, hence it would appear to be an act exempted from tort liability by the effect of the cited sections of the Local Governmental and Governmental Employees Tort Immunity Act. We see no reason why the providing of medical and hospital insurance would not be a discretionary act. It is certainly not *required* by the statute and if it is done—as we assume it is in most cases—it must be done at the discretion of the Board. Thus, the situation here seems to fall easily within the language of the Local Governmental and Governmental Employees Tort Immunity Act exempting liability of a local governmental entity or employee for discretionary acts. The procuring of medical and hospital insurance for the benefit of a student, and at his expense, appears to us to be one of many instances of an attempt by a public body to provide for a possible contingency in a reasonable and economical way, without undue burden on the individual student or his parents. Thus, the exemptions from tort liability afforded to school board members in such cases appears to be a logical, just and desirable aspect of public policy. It would inhibit sound policy making at the local level to disregard this provision giving immunity to the local board members, where they act in the exercise of their discretion—that is, in making policy decisions.

In paragraph 3 of his complaint, the plaintiff states that he was required to and did pay a fee for insurance to cover medical treatment of the plaintiff for injuries sustained through participation in the athletic program and "then and there" (that is, upon this being done) it became the duty of the Board to provide adequate insurance.

The complaint then goes on to charge negligence in one or more of the following respects:

(a) in failing to provide adequate insurance to care for permanent injuries;

(b) in failing to advise plaintiff what the limits of coverage were so that plaintiff could obtain "additional" insurance, and

(c) in failing to foresee that the plaintiff might sustain permanent injuries which might impair his ability to make a gainful living.

As to (a), as we have noted the term "adequate" is purely relative and has no meaning until after the event occurs for which the insurance is needed, therefore, it is bad pleading because it fails to set a reasonable standard foreseeable in advance. What the plaintiff really means is "adequate in my case," which means permanent disability for possibly 50 years, or as the complaint says, a need for $1,000,000. Moreover, an obligation must be based on a duty and the deduction that the defendant had a duty to provide adequate disability insurance, based on the fact

the plaintiff had been required to buy medical and hospital insurance, is unwarranted and not based on any legal principle we are aware of.

As to the failure to advise the student regarding the limits of his policy, as set out in (b), the plaintiff does not allege that he did not know the limits of his policy nor does he give any reason why he should not be expected to understand that he got what he paid for, which the complaint admits was "the expense of medical treatment." The plaintiff was a senior in high school and we see no duty on the part of the school authorities to explain to each individual student what they might reasonably suppose was understood, was not questioned by the student, and was in keeping with standard policy. No allegation was made in the complaint that the student was misled about the coverage or even that he did not understand what the coverage provided. We see no cause of action in the allegations of paragraph (b).

Paragraph (c) is very obviously defective. The plaintiff is trying to fasten liability on the Board for failure to consider the eventuality of a permanent injury. Paragraph (c) is based on the proposition that the Board had a duty to provide against the possibility of a football injury permanently affecting the plaintiff's chances for gainful employment. Plaintiff's counsel admitted at oral argument that the insurance performed the function it was intended to perform and the plaintiff was reimbursed for medical and hospital costs. Surely, the Board has no "duty" to go against its own best judgment as to what is practical and desirable in this situation and which is, moreover, dictated by the statute under which it is operating. This allegation is obviously defective as a pleading—it is a legal argument, not an allegation of fact and as such is subject to the trial court's power of dismissal.

The order of the circuit court of Carroll County dismissing the complaint is affirmed.

Judgment affirmed.

GUILD and NASH, JJ., concur.