No. 60,447

JEFFREY C. WICINA, by and through his natural guardian and next friend, ROBERT C. WICINA; and ROBERT C. WICINA and SANDRA A. WICINA, *Appellants*, v. ARCHBISHOP IGNATIUS J. STRECKER, ARCHBISHOP IGNATIUS J. STRECKER d/b/a BISHOP MIEGE HIGH SCHOOL, ARCHBISHOP IGNATIUS J. STRECKER d/b/a THE CATHOLIC ARCHDIOCESE OF KANSAS CITY IN KANSAS, BISHOP MIEGE HIGH SCHOOL, THE CATHOLIC ARCHDIOCESE OF KANSAS CITY IN KANSAS, SISTER MICHELLE FAULTUS, MARY ANN LUCAS, GARY LAMMERS, and LEONARD MOHLMAN, *Appellees*.

(747 P.2d 167)

Opinion filed December 11, 1987.

*Gregory A. Dean*, of Herron and Lewis, of Overland Park, argued the cause and was on the brief for appellants.

*Robert S. Lannin*, of Boddington and Brown, of Kansas City, argued the cause and *Kenneth J. Reilly*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff, Jeffrey C. Wicina, a student athlete attending a private high school, was injured during a football game. Wicina filed a negligence action against his high school and various other defendants alleging a breach of duty for (1) failure to provide disability insurance and (2) failure to advise and inform the plaintiff of the extent of the insurance coverage provided. The district court sustained the defendants' motion to dismiss, K.S.A. 60-212(b)(6), finding that there was no duty of the high school or any of the named defendants to provide disability insurance or to inform plaintiff of the extent of insurance coverage provided. We agree. In addition, we find that the legislature's public policy expressed in K.S.A. 72-8416, making discretionary the purchase of insurance for students against loss resulting from sickness, bodily injury, or death by accident, also applies to private schools.

Jeffrey C. Wicina was a student at Bishop Miege High School. While competing in a sophomore football game, he received severe injuries rendering him permanently quadriplegic. The defendants' student medical insurance policy did not provide lifetime disability coverage for student athletes.

Plaintiff alleges that, prior to 1973, an insurance policy was made available to Bishop Miege through the State High School Activities Association which would have covered lifetime care expenses for catastrophically injured student athletes. This policy was discussed and recommended to area athletic programs in the summer meetings of the Kansas State High School Activities Administrators. Having knowledge of this coverage, defendants affirmatively elected not to purchase it.

After his injury, Wicina filed a negligence suit against the high

school, the Catholic Archbishop, the school superintendent, the co-principals of the school, and the insurance agent responsible for advising the school. The petition alleged that:

"The defendants, by reason of their professional capacity and by reason of their conduct, had a duty and obligation to provide for the protection and well being of the students who attended Bishop Miege High School and participated in the educational and athletic programs sponsored by the school."

"The defendants, and each of them, were negligent in the exercise of their professional duties in failing to give proper and adequate advice with regard to insurance and failing to properly insure students for injury incurred as a result of school activities and in failing to properly advise and inform the students and their parents and guardians of the facts and circumstances surrounding insurance protection provided to the students."

The petition further alleged that defendants' failure to purchase disability insurance caused plaintiff financial loss.

The defendants filed a motion to dismiss, K.S.A. 60-212(b)(6), claiming that the petition stated no claim for which relief could be granted. The motion to dismiss was sustained by the district court and plaintiff appeals.

When a district judge sustains a motion to dismiss a plaintiff's petition, we are under a duty to examine the petition to determine whether its allegations state a claim for relief on any possible theory. It is not necessary for the petition to spell out a legal theory for relief so long as an opponent is apprised of the facts that entitle the plaintiff to relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim. *Beck v. Kansas Adult Authority*, 241 Kan. 13, 25, 735 P.2d 222 (1987).

In Kansas, negligence is never presumed. Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs. Further, if recovery is to be had for such negligence, the injured party must show: (1) a causal connection between the duty breached and the injury received and (2) that he or she was damaged by the negligence. An accident which is not to be foreseen by the exercise of reasonable care and prudence is not sufficient grounds for a negligence action. Actionable negligence must be based on a breach of duty. Whether duty exists is a question of law. Whether the duty has been breached is a question of fact. Further, whether there is a causal connection between the breached duty and the injuries sus-

tained is also a question of fact. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983).

In order to determine if Wicina's petition states a negligence claim, the initial inquiry is whether, as a matter of law, the defendants owe a duty to plaintiff. The district judge sustained defendants' motion to dismiss finding that the defendants had no duty to purchase or to advise the plaintiff about disability insurance. The district court's decision was based in part on *Friederich v. Bd. of Educ.*, 59 Ill. App. 3d 79, 375 N.E.2d 141 (1978), which determined the duty of a *public* school under an Illinois statute.

In *Friederich*, the Illinois Court of Appeals rejected arguments similar to those presented in this appeal. The plaintiff, a *public school student athlete*, was seriously injured in a football game and suffered permanent disability. He filed a tort action against the Board of Education alleging (1) that when he was required to pay a fee for an insurance premium to cover the expense of medical treatment for injury sustained through participation in the athletic program, it then became the duty of the defendant to provide "adequate" insurance; (2) that defendant was negligent in failing to advise plaintiff what the limits of coverage were; and (3) that defendant was negligent in failing to foresee that plaintiff might sustain permanent injuries. 59 Ill. App. 3d at 84.

The relevant Illinois statute provided that a school board "may, in its discretion, provide medical or hospital service, or both, through accident and health insurance." Ill. Rev. Stat. ch 122, ¶ 22-15 (1975). The court held that, because there was no statutory authority to provide disability insurance, no duty existed since any duty to insure could not exceed the scope of the statute. 59 Ill. App. 3d at 81.

The court further held that, even if the Board were liable in tort under the common law, the Illinois Tort Immunity Act, Ill. Rev. Stat. ch. 85, ¶ 1-101 *et seq.* (1975), exempted the board from liability under the discretionary function exception. 59 Ill. App. 3d at 83-84.

*Friederich*, however, is not dispositive of our issues because: (1) Friederich attended a public school, (2) he paid a fee to obtain medical coverage, and (3) the Illinois statute did not allow the school discretion to purchase disability insurance. It is instruc-

tive to examine our statute regarding a public school's purchase of insurance, K.S.A. 72-8416, which provides:

"The board of education of any school district *may* purchase insurance contracts to insure against *loss* resulting from sickness or bodily injury or death by accident, on the part of students who are injured on school premises, or during school sponsored activities." (Emphasis supplied.)

The statute permits but does not require the board of education of any public school district to purchase insurance to cover against any loss. The boards of education are specifically authorized by the statute to purchase insurance at their discretion. We must first determine whether the policy of this legislative enactment should be extended to private schools.

Under our constitution the primary law-making body is the legislature. Courts must respect legislative expressions when determining or when forming public policy. Given the right to form public policy by the legislature, courts are faced with three different situations: (1) The legislature has clearly declared the public policy of the state; (2) the legislature, though not directly declaring public policy, has enacted statutory provisions from which public policy may reasonably be implied; or (3) the legislature has neither made a clear statement of public policy nor can it be reasonably implied.

When it enacted K.S.A. 72-8416, the legislature granted discretion to the boards of education of public school districts to determine whether or not they should expend public money to purchase insurance for students against loss resulting from sickness, bodily injury, or accidental death. We find that, when enacting K.S.A. 72-8416, the legislature stated the policy for public schools and also implied that the same public policy be extended to private schools.

In both Illinois and Kansas there is a difference in the liability exposure of a private and a public school. If Wicina had been a student of a public school, the decision of the board of education of the school district would have been within the exceptions to liability provided by the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, to local government entities and their employees. Since the Kansas Tort Claims Act does not provide private schools protection, we must examine Wicina's claims to determine if a duty existed.

Plaintiff stated in his petition that once a private school exercises its discretion and purchases insurance, the school becomes responsible for obtaining disability coverage. Plaintiff's first theory is based on K.S.A. 72-8501, which provides:

"It is the intent and purpose of the legislature that the practice of teaching and its related services, including school administration and supervisory services, shall be designated as professional services. Teaching and school administration are hereby declared to be professions in Kansas with all the similar rights, responsibilities, and privileges accorded other legally recognized professions."

Plaintiff argues that the statute imposes a general duty on professional educators to perform their educational and related tasks according to the standard of care of reasonable persons in the same field. He contends that this statutory duty was breached and the plaintiff was injured because the defendants purchased insurance that failed to provide complete coverage for his injury and resulting disability. Plaintiff proposes to establish the statutory standard of care through expert testimony, *i.e.*, other educators in the area. Plaintiff cites various cases in support of this argument; however, these cases focus on educational malpractice or negligence in the act of teaching and are therefore distinguishable from the duty to properly insure.

Although plaintiff concedes that the school had never specifically contracted to insure the students, he reasons that such an obligation arose when the defendants, as professionals, contracted to provide education and instruction, including extracurricular activities, to students. Plaintiff provides no supporting facts or authority for this theory. Under well-established contract principles, since the contract has no requirement for insurance, there is nothing for the court to interpret, nor can the court make a new contract for the parties under the guise of construction. *Quenzer v. Quenzer*, 225 Kan. 83, 85, 587 P.2d 880 (1978).

Other cases have extended the duty of teachers and schools beyond merely the practice of teaching. However, the majority of these cases involve the duty of the school to provide a reasonably safe environment for the students. In *Paulsen v. U.S.D. No. 368*, 239 Kan. 180, 717 P.2d 1051 (1986), where a student brought an action against a teacher and the school district for injuries suffered in a woodworking class, this court appeared to agree with the lower court's finding that a teacher owed a student a duty to

properly supervise him and that the school district owed the student the duty of providing him with a reasonably safe environment. See also *Rhea v. Grandview School Dist.*, 39 Wash. App. 557, 560, 694 P.2d 666 (1985) (school district owes duty to its pupils to anticipate reasonably foreseeable dangers and to take precautions protecting children in its custody from such dangers).

Plaintiff cites no authority holding that a school board or teacher's duty to insure or advise derives merely from professional status. Plaintiff does cite a number of cases where insurance agents have been held liable in tort for negligence in arranging for insurance coverage. *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 498 P.2d 265 (1972); *Marshel Investments, Inc. v. Cohen*, 6 Kan. App. 2d 672, 634 P.2d 133 (1981). However, those cases discuss an insurance agent's duty to provide proper insurance based on contract and agency principles. Professional educators and school administrators are not required to exercise the same standard of care as an insurance agent when obtaining medical insurance for their students.

Plaintiff's second theory is based on the duty of a volunteer and the Restatement (Second) of Torts § 323 (1963). Wicina argues that, even though there may be no duty to purchase insurance, once the school voluntarily undertook to insure, there was a duty to use reasonable care in the purchase. Plaintiff cites *Maddock v. Riggs*, 106 Kan. 808, 190 Pac. 12 (1920), for authority. Plaintiff's reliance is misplaced. In *Maddock*, the defendant Riggs volunteered to remit Maddock's life insurance premiums to a fraternal organization. Riggs failed to remit for one month, Maddock's policy lapsed, and Riggs failed to notify Maddock that his policy had lapsed. After Maddock's death, his beneficiary brought suit alleging negligence in failing to properly remit. Citing agency and gratuitous bailment principles, this court found that Riggs was negligent since he had failed to do something he was required to do. 106 Kan. at 811-16. *Maddock* is distinguishable from this case because these defendants were not required to purchase any insurance. Further, after defendants volunteered to insure, they properly purchased the medical insurance and paid the premiums. Wicina received the benefits he was entitled to under the defendants' insurance contract.

The Restatement (Second) of Torts § 323 provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking."

This section of the Restatement was originally adopted by this court in *Circle Land & Cattle Corp. v. Amoco Oil Co.*, 232 Kan. 482, 490, 657 P.2d 532 (1983). There, plaintiffs, owners of International Harvester irrigation machinery, contacted a product specialist for Amoco Oil for a recommendation on what type of oil should be used in the machines. Defendant International Harvester conducted a surveillance program and initially determined that the oil recommended by Amoco was suitable. Subsequently, damage resulted to the machines from the type of oil recommended. The court then reasoned that, although International Harvester had no duty to conduct the surveillance program, once it undertook to do so, it owed plaintiffs a duty of reasonable care.

This section of the Restatement was later applied in *Burgess v. Perdue*, 239 Kan. 473, 721 P.2d 239 (1986). Perdue, a physician, while under no duty to obtain the plaintiff's consent to an autopsy of her son, nevertheless requested consent and then failed to relay the qualified consent to the coroner. The court found that, by voluntarily undertaking to obtain consent, the physician assumed a duty to relay the plaintiff's limitation to the autopsy. 239 Kan. at 481. In both *Circle Land* and *Burgess*, however, the duty imposed by the court arose out of an affirmative undertaking by the defendant, *i.e.*, testing the engines and obtaining the consent, upon which the plaintiff relied.

The requirements of Restatement (Second) of Torts § 323 are not met in this case. Here, the school voluntarily provided *medical* insurance coverage to its students. Plaintiff does not allege that the defendants were negligent when the decision was made to purchase medical insurance, but that they were negligent when they failed to obtain the additional disability coverage. We disagree. The defendants' failure to purchase disability

insurance did not increase the risk of the plaintiff being injured while playing football nor did the plaintiff rely on the defendants' promise to purchase disability insurance when he decided to play football. Therefore, the Restatement § 323 does not apply here because plaintiff did not rely on any affirmative action taken by the defendants.

In *Friederich*, the Illinois court reached a similar conclusion and rejected the application of the Restatement. The court found that the risk of injury was not increased nor was the physical harm suffered by the plaintiff caused by the school's failure to provide disability insurance. 59 Ill. App. 3d at 83.

Finally, there are important public policy considerations that forbid this court from imposing upon a private school a greater duty than that imposed by the legislature on public schools. If plaintiff's arguments were adopted, private schools that refuse to purchase any type of medical insurance would owe no duty to an injured or disabled student and would not be subject to liability. Private schools purchasing insurance would face the prospect of actions when the insurance coverage was not broad enough or the amount of coverage was not sufficient to compensate the injured student. Private schools would be forced to take the safe course and would simply refuse to purchase any insurance for their students.

Prosser has stated that " 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." Prosser, Law of Torts § 53, pp. 325-26 (4th ed. 1971). We feel sympathy for the severe injuries suffered by this plaintiff. However, there are dangers and risks inherent in the game of football and those who play the game encounter these risks voluntarily. It is fundamental that before there can be any recovery in tort there must be a violation of a duty owed by one party to the person seeking recovery. *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 212, 734 P.2d 1177 (1987) (citing *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374, 552 P.2d 885 [1976]; Black's Law Dictionary 1660-61 [4th ed. rev. 1968]; 74 Am. Jur. 2d, Torts § 8; 86 C.J.S., Torts § 6). This duty can arise by common law, by statute, or by contract. It is clear under the facts of this case that no common-law, statutory,

or contractual duty existed to properly insure or to advise the plaintiff regarding medical insurance purchased by the defendants for the plaintiff.

Affirmed.