No. 77,490

REBECCA WOODRUFF, Individually, MAX WOODRUFF, Individually, and REBECCA and MAX WOODRUFF, for and on behalf of MORGAN ELIZABETH WOODRUFF, Deceased, *Appellants,* v. THE CITY OF OTTAWA, KANSAS, a Kansas municipality, *Appellee,* and THE CITY OF OTTAWA POLICE DEPARTMENT, JEFF HERRMAN, in his Representative Capacity as Police Chief for the CITY OF OTTAWA POLICE DEPARTMENT, *Defendants.*

(951 P.2d 953)

Opinion filed December 30, 1997.

*Ronald P. Pope*, of Eugene B. Ralston & Associates, of Topeka, argued the cause and was on the brief for appellant.

*Michael K. Seck*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiffs Rebecca and Max Woodruff brought an action against the City of Ottawa, Kansas, (City) for wrongful death and personal injury arising when the Woodruffs' car was struck by an automobile driven by Douglas A. Totton, who was operating his vehicle under the influence of alcohol. At the time of the accident,

Rebecca Woodruff was pregnant with a daughter who later died as a result of the accident. The plaintiffs alleged in the petition that they were injured due to the Ottawa police officers' failure to arrest, detain, and prevent the intoxicated Totton from driving his vehicle. The district court granted the City's motion for summary judgment, concluding that because the City did not have a written policy requiring an officer to arrest Totton or take him into custody to prevent him from operating a motor vehicle, the City owed no duty to the plaintiffs.

On March 26, 1994, Officers David Fitzgerald and Matthew Weidl, who were employed by the City police department, responded to a disturbance call at the Walkman's Club in Ottawa. When the officers arrived at the club, an altercation between Totton and Charles Likes had ended. Totton was inside the club and Likes was standing outside.

Officer Fitzgerald entered the club and ordered Totton to exit the club. Fitzgerald noted in his report that Totton appeared to be drunk. Neither Totton nor Likes pressed charges against the other, and no arrests were made. Neither Officer Fitzgerald nor Weidl saw Totton drive away. Fitzgerald stated that if he had observed Totton attempting to drive a vehicle, he would have advised Totton to find another way to leave. The City does not have a written policy which requires an officer to take an intoxicated individual into custody under such circumstances. The officers left to respond to another call before Totton left the premises. Shortly after Totton left the club, the vehicle he was driving collided with plaintiffs' vehicle, causing injury to the plaintiffs and the death of their unborn child.

Plaintiffs filed a wrongful death and personal injury action against the City, the City police department, and the Chief of Police. Plaintiffs alleged that Officers Fitzgerald and Weidl were negligent in failing to arrest, detain, or otherwise prevent Totton from operating a vehicle when they were aware he was under the influence of intoxicating liquor. The petition claimed that the defendant "owed a duty to the users of the roadway to have prevented an obviously intoxicated individual from operating a vehicle upon the roadways." Plaintiffs later dismissed the police department and the police chief from the suit.

Subsequently, the City filed a motion for summary judgment claiming that (1) the officers owed no duty to plaintiffs; (2) the officers were immune because the decision whether to take Totton into custody was a discretionary act under K.S.A. 75-6104 of the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*; and (3) the officers' acts were not the proximate cause of plaintiffs' injuries. In ruling that the officers owed no duty to plaintiffs, the district court stated:

"[T]he damage to the Plaintiff[s] did not come to the Plaintiff[s] because [Totton] left the premises or failed to leave the premises. . . . [I]t came about because the person ordered to leave thereafter drove an automobile.

. . . .

"I specifically note that uncontroverted fact six indicates the officer left to respond to another call before Totton left the premises . . . .

"[Fact] Thirty-two of the Plaintiffs is [that] no officer was aware of Totton or Mr. Likes leaving after they were told to leave [the club].

"The duty that Plaintiffs appear to be urging that I hold upon the Defendants is that after they ordered Mr. Totton and Mr. Likes to leave, that the police officer assumed the duty to ensure that they did not thereafter violate any laws [as] persons in their condition were likely to do.

. . . .

"I don't believe there's any indication that there's any policy that required them to assume that a person not then violating a law would violate the law in the future."

The district court granted the City's motion for summary judgment.

## DISCUSSION

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Moorhouse v. City of Wichita*, 259 Kan. 570, 575-76, 913 P.2d 172 (1996); *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

For an individual to be liable for a negligent or wrongful act, there must be a duty to act. Therefore, the injured party must

show: (1) a causal connection between the duty breached and the injury received and (2) damage from negligence. An accident which is not reasonably foreseeable by the exercise of reasonable care and prudence is not sufficient grounds for a negligence action. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983). The general rule is that an actor has no duty to control the conduct of third person to prevent that person from causing harm to others unless a "special relationship" exists between the actor and the third party or the actor and the injured party. Restatement (Second) of Torts § 315 (1963). See *Thies v. Cooper*, 243 Kan. 149, 151, 753 P.2d 1280 (1988).

Here, the duty alleged by the plaintiffs was that the police officers were required to control and prevent the intoxicated Totton from causing harm to the plaintiffs. Whether a duty to the plaintiffs exists is a question of law. Determining whether the duty has been breached and whether there is a causal connection between the breached duty and the injuries sustained is a question of fact. *Durflinger v. Artiles*, 234 Kan. at 488. Without a duty, there can be no breach to support the claims of plaintiffs. See *Nero v. Kansas State University*, 253 Kan. 567, 571, 861 P.2d 768 (1993). Our review of questions of law is unlimited. *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 831, 877 P.2d 430 (1994).

## I. *KANSAS TORT CLAIMS ACT*

Under the Kansas Constitution, the primary lawmaking body is the legislature. Courts must respect legislative expressions when determining or forming public policy. Given the right to form public policy by the legislature, courts are faced with three different situations: (1) The legislature has clearly declared the public policy of the state; (2) the legislature, though not directly declaring public policy, has enacted statutory provisions from which public policy may reasonably be implied; or (3) the legislature has not made a clear statement of public policy or such a policy cannot be reasonably implied. *Wicina v. Strecker*, 242 Kan. 278, Syl. ¶ 3, 747 P.2d 167 (1987).

The common-law rule is that a state (sovereign) cannot be sued without its consent. No suit, whether at law or in equity, can be

maintained against the State unless the State has given its consent or waived its immunity. The purpose of the immunity is to protect the State from interference with the performance of its governmental functions. The common law is subject to modification by judicial decision or legislative enactments in light of changing conditions.

In *Carroll v. Kittle*, 203 Kan. 841, 457 P.2d 21 (1969), the court recognized that in Kansas the doctrine of governmental immunity had a judicial origin. The legislature, having adopted no general rules regarding immunity, had left the matter to the Kansas courts to determine the applicable public policy. The Kansas courts had provided general rules for determining whether the governmental body had embarked on an enterprise which was commercial in character or which was usually carried on by private individuals or private companies, thereby losing its immunity. Because the legislature was in a better position than the court to restrict the application of governmental immunity, the Kansas Supreme Court in *Carroll* abolished the judicially created doctrine of governmental immunity.

Subsequently, the legislature enacted the Kansas Tort Claims Act which became effective July 1, 1979. Under the Act, liability became the rule for negligent or tortious conduct of a governmental employee and immunity became the exception. When wrongful death or injury are caused by a governmental employee acting within the scope of his or her employment, K.S.A. 75-6103(a) extends liability to the employing governmental entity, stating:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

The Act provides immunity from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused." K.S.A. 75-6104(e). The Act places the burden upon the governmental en-

tity or employee to establish entitlement to any of the exceptions to liability set forth in K.S.A. 75-6104. The legislature failed to define what it meant by the term "discretionary function" and shifted that obligation to the courts. See *Hopkins v. State*, 237 Kan. 601, 608-10, 702 P.2d 311 (1985). Because the legislature had not clearly defined what was a discretionary function, Kansas courts began to determine what discretionary acts of a governmental employee were immune under the Act.

## II. DISCRETIONARY FUNCTION

In *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982), the court attempted to determine which acts of law enforcement officers fell within the discretionary function exception of the Act. Robertson called the Topeka police to seek their assistance in removing a trespasser from his property. When the police arrived, Robertson advised the officers that the trespasser was drunk, had no right to be on the property, and would likely burn the house down. The officers allowed the trespasser to remain and ordered the plaintiff to leave his premises. Fifteen minutes later, the plaintiff's house burned.

Robertson filed an action claiming that under the circumstances, the police had a duty to insure that the trespasser did not burn the house down. The *Robertson* court refused to impose liability upon the city or the police, finding that the officers' determination of what action to take was discretionary and protected under K.S.A. 1981 Supp. 75-6104(d). The *Robertson* court noted that in determining whether an action falls within the discretionary function exception of the Kansas Tort Claims Act, the concern of the court should be the nature and quality of the discretion exercised rather than the status of the employee exercising that discretion. It pointed out that under the common law, the duty of a law enforcement officer to preserve the peace is a duty owed to the public at large, not to a particular individual. Absent some special relationship with or specific duty owed an individual, liability will not lie for damages. 231 Kan. at 362-63. The *Robertson* court concluded that under the circumstances, the officers had exercised discretion;

therefore, there was no duty for the officers to protect the plaintiff's property.

After *Robertson*, this court again addressed liability based upon a failure of police to take an intoxicated person into custody in *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986). In *Fudge*, plaintiffs filed a wrongful death action arising out of an automobile accident. The decedent James Fudge's delivery van was struck by the vehicle driven by Delmar Henley. Henley had consumed 29 to 30 beers and 10 "kamikazees" at a bar. The bartender told Henley to leave. Henley refused. The bartender called the Kansas City police. When the police arrived, Henley and others were in the adjoining parking lot. The officers observed that Henley was intoxicated. The police officers instructed everyone in the parking lot to leave the premises. As instructed, the intoxicated Henley drove his car from the scene. As Henley left the parking lot, his vehicle collided with the van driven by Fudge. Fudge died 20 days later of injuries received in the accident. The results of a blood alcohol test taken shortly after the accident showed Henley's blood alcohol level to be .26%.

Fudge's wife and children brought a wrongful death and survival action against Henley and the City of Kansas City. Plaintiffs asserted that because the officers were subject to specific, mandatory guidelines to take an intoxicated person into custody, the officers had no discretion because of the specific duty to protect others from injury by the intoxicated person. At trial, the jury found the decedent 7% at fault, Henley 75% at fault, and the City of Kansas City and the police officers 18% at fault and awarded damages in the amount of $1,095,103.66. On appeal, relying on the rationale of *Robertson*, the City of Kansas City asserted it was immune from liability for the discretionary actions of its law enforcement officers under the Kansas Tort Claims Act and that the officers had no special relationship with nor owed a duty to Fudge.

The *Fudge* court observed:

" '[A]s a general rule, the duty of a law enforcement officer to preserve the peace is a duty owed to the public at large. Absent some special relationship with or specific duty owed an individual, liability will not lie for damages. *Robertson v. City of Topeka*, 231 Kan. at 363. Absent guidelines, police officers are vested with

the necessary discretionary authority to act in an appropriate manner to protect the public.' " 239 Kan. at 372 (quoting *Hopkins*, 237 Kan. at 611).

The court observed that one who undertakes, gratuitously or for consideration, to render services to another which he or she should recognize as necessary for the protection of a third person or his or her things is subject to liability to the third person for physical harm resulting from his or her failure to exercise reasonable care to protect the undertaking, if (a) his or her failure to exercise reasonable care increases the risk of such harm, or (b) he or she has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking. 239 Kan. at 373 (citing Restatement [Second] of Torts § 324A [1963]). The *Fudge* court noted that K.S.A. 75-6104(d) (Ensley 1984) grants immunity for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused." 239 Kan. at 374.

The *Fudge* court pointed out that the Kansas City police department had a standard operating procedure manual which mandated that an intoxicated individual likely to do physical injury to himself or others "*will* be taken into protective custody." 239 Kan. at 373. After a discussion of *Robertson* and the city's adoption of a specific mandatory set of guidelines for police officers to use with regard to handling intoxicated persons, the *Fudge* court determined that the guidelines adopted by the city left no discretion to the police. The *Fudge* court held that where the police are subject to a specific, mandatory set of guidelines to use with regard to handling intoxicated persons, the officers and the employing municipality are subject to liability under the Kansas Tort Claims Act for the failure to follow those guidelines. The court found that under these circumstances, K.S.A. 75-6104(d) was inapplicable and the defendants were not immune under the discretionary function exception to the Act. 239 Kan. at 374-75. The *Fudge* court also concluded that since the officers should have realized that taking Henley into protective custody was necessary under the city's man-

datory guidelines for the protection of third persons, their failure to do so increased the risk that Henley would cause physical harm to others, and under such circumstances, the City of Kansas City was subject to liability. 239 Kan. at 373.

*Fudge* was decided in 1986. Kansas courts recognize the rule that a breach of a duty imposed by law is negligence and that damages may be predicated on a violation of a statute if the breach is the proximate cause of the injury or substantially contributes to the injury. The declaration of public policy of whether an action can be brought pursuant to a statute is a function of the legislative branch of our government. *Brunett v. Albrecht*, 248 Kan. 634, Syl. ¶ 5, 810 P.2d 276 (1991). After *Fudge*, the legislature made a clear statement that this court had wrongly interpreted the discretionary function exception. The 1987 amendment to 75-6104 provided that governmental employees when exercising discretion are immune from tort liability resulting from:

"adoption or enforcement of, or failure to adopt or enforce, any written personnel policy which protects persons' health or safety unless a duty of care, independent of such policy, is owed to the specific individual injured, except that the finder of fact may consider the failure to comply with any written personnel policy in determining the question of negligence." K.S.A. 75-6104(d).

In *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, Syl. ¶ 1, 938 P.2d 1293 (1997), the court analyzed K.S.A. 75-6104(d) and determined:

"The legislative history of K.S.A. 75-6104(d) makes it clear that the 1987 amendment to that statute was intended to not allow the result in *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), to remain as the law in Kansas. *Fudge* can no longer be relied upon as valid precedent to establish liability as a result of a public employee's failure to follow written personnel policies, unless an independent duty of care is owed to the injured party."

Here, the Woodruffs acknowledge that the City did not have a written policy mandating that Totton be taken into custody under the circumstances. They assert that an unwritten policy to protect a third party was created when Officer Fitzgerald, the supervising officer, instructed Officer Weidl to observe Totton leave the club. We disagree. Under the circumstances, an oral instruction from a supervising officer to another officer to observe an intoxicated per-

son fell within the discretionary function exception of K.S.A. 75-6104(e) and did not create a special relationship with or a specific duty owed to the plaintiffs.

Affirmed.

SIX, J., concurring: As the majority opinion acknowledges, the district court's summary judgment ruling was granted because the City had no written policy requiring an officer to arrest Totton or take him into custody. Thus, the district court reasoned, no duty was owed to the Woodruffs.

After discussing *Fudge,* quoting K.S.A. 75-6104(d), and citing *Jarboe,* the majority opinion says:

"Here, the Woodruffs acknowledge that the City did not have a written policy mandating that Totton be taken into custody under the circumstances. They assert that an unwritten policy to protect a third party was created when Officer Fitzgerald, the supervising officer, instructed Officer Weidl to observe Totton leave the club."

I write to counter any inference that the *Fudge* rationale, as described in *Jarboe,* 262 Kan. 615, Syl. ¶ 1, may remain alive and well. The post-*Fudge* amendment in K.S.A. 75-6104(d) controls.