IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,684

NANCY GRANADOS, Individually, as Heir-at-Law of Francisco Granados, Decedent, and
as Class Representative of All Heirs-at-Law of Francisco Granados, Decedent,
*Appellee/Cross-appellant*,

v.

JOHN WILSON,
*Defendant*,

and

KEY INSURANCE COMPANY,
*Appellant/Cross-appellee.*

SYLLABUS BY THE COURT

1.

On appeal from a garnishment award, an appellate court conducts a mixed review of law and fact. Under that framework, an appellate court reviews the district court's legal conclusions independently, with no required deference to the district court. But review of the district court's factual findings is deferential. The appellate court must accept those findings if they are supported by substantial competent evidence.

2.

Under established Kansas precedent, an insurer owes its insured two legal duties when handling third-party liability claims against the insured: the duty to act with reasonable care and the duty to act in good faith. These two legal duties are implied contractual terms incorporated into liability insurance policies in our state.

1

3.

An insurer's failure to fulfill its implied contractual duties to act with reasonable care and in good faith gives rise to an action for breach of contract, rather than an action in tort, because an insurance policy is typically a contract. Even so, Kansas law applies tort concepts to evaluate whether an insurer has breached the implied contractual terms to act with reasonable care and in good faith. Thus, plaintiffs asserting such claims must prove four well-known elements: a duty owed to the plaintiff; a breach of that duty; causation between the breach of duty and the injury to the plaintiff; and damages suffered by the plaintiff.

4.

Generally, a court commits legal error by articulating the insurer's implied contractual duty to act with reasonable care or the implied contractual duty to act in good faith in a more particularized, fact-specific manner because it conflates the question of duty, a question of law, with the question of breach, a question typically reserved for the trier of fact.

5.

For an insurer to be liable for a judgment exceeding the coverage limits under the policy of insurance, there must be a causal link between the insurer's breach of duty and the excess judgment.

6.

When a party fails to meet its burden of production and persuasion, remand is not generally an appropriate remedy.

Review of the judgment of the Court of Appeals in 62 Kan. App. 2d 10, 505 P.3d 794 (2022). Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed January 27, 2023. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

*James P. Maloney*, of Foland, Wickens, Roper, Hofer & Crawford, P.C., of Kansas City, Missouri, argued the cause, and *Kevin D. Brooks*, of the same firm, and *James D. Oliver*, of Foulston Siefkin, LLP, of Overland Park, were with him on the briefs for appellant/cross-appellee.

*Michael W. Blanton*, of Gerash Steiner Blanton P.C., of Evergreen, Colorado, argued the cause, and *Jared A. Rose*, of The Law Office of Jared A. Rose, of Kansas City, Missouri, was with him on the briefs for appellee/cross-appellant.

*Richard L. Budden*, of Shamberg, Johnson & Bergman, Chtd., of Kansas City, Missouri, and *Jakob Provo* and *James R. Howell*, of Prochaska, Howell & Prochaska LLC, of Wichita, were on the brief for amicus curiae Kansas Trial Lawyers Association.

*Cynthia J. Sheppeard*, of Goodell Stratton Edmonds & Palmer LLP, of Topeka, was on the brief for amicus curiae Kansas Association of Defense Counsel.

The opinion of the court was delivered by

WALL, J.: This garnishment action arises from tragic circumstances. In October 2017, John Wilson was driving inebriated and ran a red light, striking another car and killing the driver. The driver's wife, Nancy Granados, brought a wrongful-death lawsuit against Wilson, and the district court entered a judgment against Wilson for $3,353,777.52.

To collect on that judgment, Granados filed a garnishment action seeking payment from Key Insurance Company under the automobile liability insurance policy it had issued to Wilson. Under that policy, Key limited its coverage for bodily injuries caused by Wilson to $25,000 per person or $50,000 in the aggregate. Despite these policy limits,

3

Granados alleged Key's negligent and bad-faith handling of Wilson's claim rendered it liable for the entire judgment. After conducting a bench trial, the district court agreed with Granados and entered judgment against Key for $3,481,901.29.

But on appeal, a panel of the Court of Appeals reversed the district court's judgment. The parties ask us to resolve two issues central to the panel's holding: (1) whether an insurer has a legal duty to settle with an injured third-party before that party has formally demanded compensation for injury; and (2) whether Granados proved that Key's negligence and bad faith caused the excess judgment against Wilson.

As to the first question, we reject the framing of the issue below. We decline the invitation to define an insurer's legal duties more narrowly, or in a more particularized manner, than established under our precedent. And under that precedent, insurers do not have a discrete legal duty to settle. Rather, when handling claims against its insureds, insurers have an implied contractual duty to act in good faith and to act with reasonable care under the circumstances. Whether specific acts or omissions related to the insurer's investigation, evaluation, communication, or settlement strategy breach either of these two legal duties is a question typically reserved for the trier of fact. By trying to define the contours of an insurer's purported "duty to settle" under Kansas law, the panel transformed a question of fact into a question of law, thereby invading the province of the fact-finder.

When a court applies an incorrect legal standard or framework, we often remand the case so the court can apply the correct one. But such a remand would be futile here because, as to the second question, we hold Granados failed to meet her burden to prove that Key's handling of the claim caused the judgment exceeding policy limits. Whether an insurer's conduct was the proximate or legal cause of the judgment is a question of fact. And as an appellate court, we typically defer to the district court's findings on such matters. But our deference is not absolute—a district court's findings must be supported

4

by substantial competent evidence. The record before us contains no evidentiary support for the district court's finding that Key's conduct caused the excess judgment against Wilson. And because causation is an essential element of Granados' claim against Key, we affirm the panel's decision, albeit under a different rationale, and remand the matter to the district court to enter judgment for Key.

FACTS AND PROCEDURAL BACKGROUND

The facts relevant to the issues before our court occurred after Key learned of the October 2017 crash that killed Granados' husband. Thus, we do not focus on the circumstances leading to the crash. Suffice it to say there is no dispute Wilson was at fault.

Wilson notified Key about the crash the day after it happened. Based on this notice, Granados was identified as a claimant in Key's claim management system. This notice also triggered Key's claim liability review. As part of that review, Key obtained the police report, which revealed Wilson had run the light and appeared to be under the influence of alcohol or drugs or both. Thus, Key concluded Wilson was at fault and damages would exceed the $25,000 per-person coverage limit for bodily injuries under the automobile liability policy.

But Key never informed Wilson that it had reached that conclusion. It never contacted Granados to discuss settlement. Nor did it inform Wilson he would be responsible for any judgment exceeding policy limits if the case did not settle within those limits. Key eventually closed its claim file, believing Granados would not pursue any claim against Wilson.

In June 2018, about eight months after the accident, Granados filed a wrongful-death suit against Wilson. Key learned of the suit in early July. Three weeks later, it

5

offered to settle Granados' claim against Wilson for the $25,000 policy limit. But Granados rejected that offer, explaining Key's failure to offer the policy limit pre-suit constituted negligence and bad faith because insurers have a duty to promptly begin settlement negotiations when liability is clear and damages exceed policy limits. Whether insurers have a discrete legal duty under Kansas law to initiate settlement negotiations would come to frame much of the ensuing litigation, including the issues before our court.

After rejecting Key's settlement offer, the parties entered a "Settlement Agreement and Covenant not to Execute." Under that agreement, Granados promised not to execute on any judgment she obtained against Wilson in the wrongful-death action. In exchange, Wilson assigned to Granados any claims he had against Key under the automobile liability insurance policy. Following a September 2019 bench trial in the wrongful-death action, the district court entered judgment for Granados and against Wilson for nearly $4.5 million. The district court later granted a joint motion to amend the judgment, reducing the judgment amount to $3,353,777.52.

Several months later, Granados tried to collect on that judgment by filing a garnishment action against Key in Wyandotte County District Court. Standing in the shoes of Wilson in that garnishment action, Granados alleged Key had breached several implied contractual duties that it owed to Wilson. Granados alleged Key breached its duty to investigate the claim, its duty to evaluate the claim and consider the insured's interests, its duty to communicate the results of the investigation and evaluation to the insured, and its duty to negotiate a settlement. Granados argued these discrete legal duties, implicit in the automobile liability policy, required Key to contact Granados before the wrongful death suit was filed and settle for policy limits. Granados alleged she would have accepted that offer to avoid hiring a lawyer and suing. Thus, Granados claimed Key's breach of these implied contractual duties caused the judgment exceeding the $25,000 policy limit.

6

Both parties moved for summary judgment. Consistent with Granados' framing of the case, the summary-judgment filings focused on the scope of an insurer's discrete legal duties under Kansas law. The district court denied both motions and set the case for trial.

The matter proceeded to a two-day bench trial in November 2020. While several people testified, the testimony from two witnesses is particularly relevant to our analysis. First, Granados testified that before she engaged counsel and filed the wrongful death suit, she would have settled within policy limits, even if it were only $2,000 or $5,000, to avoid taking the case to trial and paying attorney fees. Second, a Key employee testified that many injured third parties never pursue recovery and about two-thirds (66%) of potential bodily-injury claimants never receive any payment from Key.

The district court issued its ruling from the bench. As the Court of Appeals panel observed, the "district court's comments about the case were somewhat meandering, and the court did not delineate explicit findings of fact and conclusions of law." *Granados v. Wilson*, 62 Kan. App. 2d 10, 17, 505 P.3d 794 (2022). That said, the district court's comments established several relevant findings, including: (1) Granados was a credible witness and would have settled for the $25,000 policy limit if Key had pursued settlement pre-suit; (2) it was reasonable under the circumstances for Key not to initiate settlement, so Key did not have a duty to do so; (3) Key breached its duty to communicate the results of its evaluation to Wilson and advise him of his personal liability for a judgment exceeding the policy limits; and (4) Key's breach of its duty to communicate with Wilson caused the excess judgment. Based on those findings, the district court entered judgment for Granados in the amount of $3,481,901.29.

Both parties sought review at the Court of Appeals. In Key's appeal, it argued Granados had failed to present evidence showing that Key's failure to communicate with Wilson had caused the excess judgment against him. In Granados' cross-appeal, she

7

objected to the district court's ruling on Key's duty to settle. She claimed Key—like all insurers faced with clear liability and damages exceeding policy limits—had a duty to initiate settlement negotiations and its breach of this duty exposed Wilson to the excess judgment.

A panel of the Court of Appeals reversed the district court's judgment for Granados and remanded the matter with directions to enter judgment for Key. The panel first held that reversal was warranted because, after reviewing the record, it was clear that "the excess judgment was more the result of [Granados'] actions after the lawsuit was filed, rather than Key's conduct before the lawsuit was filed." 62 Kan. App. 2d at 39. The panel then considered whether Key had a legal duty to settle. It affirmed the district court on that point, holding that in the context of third-party claims, insurers have no legal duty to begin negotiations before the injured third party has filed a claim. 62 Kan. App. 2d at 39-49.

Following the panel's decision, we granted Granados' petition for review. We heard oral argument from the parties in October 2022. Jurisdiction is proper. See K.S.A. 60-2101(b) (providing for Kansas Supreme Court review of Court of Appeals decisions).

ANALYSIS

Granados raises two challenges to the decision of the Court of Appeals panel. First, she contends the panel concocted a new rule of law by holding that an insurer's duty to settle with an injured third party is not triggered until the third party has filed a claim. Granados argues an insurer's duties—including the duty to settle—begin once the insurer has notice of the claim. Second, Granados contends the panel improperly disregarded the district court's factual findings when it found that her conduct, not Key's breach of duty, had caused the excess judgment against Wilson. Key defends the panel's holdings.

8

And in an amicus brief, the Kansas Association of Defense Counsel urges us to affirm the panel's holding that the purported duty to settle does not begin until a third party has made a claim against the insured. In another amicus brief, the Kansas Trial Lawyers Association urges us to reverse the panel's decision and hold that the insurer's duty to settle arises when the injury occurs.

To resolve these issues, we first explain the legal standard appellate courts use when reviewing an appeal from a garnishment order. Second, we identify the two implied contractual duties insurers owe their insureds and carefully distinguish questions of legal duty from those related to a breach of such duty. Third, we evaluate the panel's holding, ultimately concluding the panel applied an incorrect legal framework. Finally, we address the question of causation and explain why it is appropriate for our court to resolve this appeal without a remand to the panel.

I.  *On Appeal from a Garnishment Order, We Defer to the District Court's Factual Findings but Review Legal Conclusions Independently*

On appeal from a garnishment award, an appellate court conducts a mixed review of law and fact. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). Under that framework, an appellate court reviews the district court's legal conclusions independently, with no required deference to the district court. But our review of the district court's factual findings is deferential. We must accept those findings if they are supported by substantial competent evidence. Substantial competent evidence is relevant evidence that a reasonable person might accept as supporting a conclusion. 309 Kan. at 190-91. When making that determination, an appellate court must not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 309 Kan. at 190-91.

9

This case requires us to review both legal conclusions and factual findings. The legal conclusions before us are those related to the legal duties that insurers owe to their insureds. See *Montgomery v. Saleh*, 311 Kan. 649, 653, 466 P.3d 902 (2020) ("Whether a duty exists is a question of law."). When we review those conclusions, we need not defer to the conclusions of the district court or panel. The factual findings before us are those related to Key's breach of its legal duties and the cause of the excess judgment against Wilson. See 311 Kan. at 655-56, 659 ("[W]hether [a] duty has been breached" and "[w]hether a causal connection exists between a breached duty and the plaintiffs' injuries" are questions of fact.). When we review those findings, we defer to the district court so long as substantial competent evidence supports its findings.

II. *When Handling Claims Against the Insured, Insurers Owe the Insured an Implied Contractual Duty of Reasonable Care and an Implied Contractual Duty to Act in Good Faith; Whether an Insurer Has Breached Those Duties Is a Question for the Trier of Fact to Determine Under the Specific Circumstances of Each Case*

Legal duties can arise by express contractual provision, by statute, or by court-made common law. *Wicina v. Strecker*, 242 Kan. 278, 286, 747 P.2d 167 (1987). Here, we are concerned with Key's court-made, common-law duties. Under our established precedent, these legal duties are incorporated into Kansas liability insurance policies as implied contractual terms. To be sure, Wilson's insurance policy imposes various express contractual duties on both him and Key. See *Aves v. Shah*, 258 Kan. 506, 511, 906 P.2d 642 (1995) ("In Kansas, insurance policies are typically considered contracts."). And the Legislature has also imposed legal duties on insurers by statute. See, e.g., K.S.A. 40-2404(9) (identifying duties of the insurer related to claims-settlement process). But Granados has asserted no claim arising from an alleged breach of an express contractual or statutory duty that Key owed Wilson. Thus, our focus is on the implied contractual duties that Kansas courts have read into liability insurance contracts and applied to insurers operating in this state.

10

The leading decision establishing the implied contractual duties of an insurer when handling third-party claims against the insured is *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969). There, our court recognized that a conflict of interest between the insurer and the insured arises when there is a claim that exceeds the coverage limits in the policy. The conflict arises because the insurer is interested in minimizing the amount paid while the insured is interested in preventing personal liability by keeping recovery within policy limits, regardless of the merits of the claim:

> "The provisions of the policy requiring the insurer to defend also encompass the negotiation of any settlement prior to trial. When a claim is made against the insured for an amount in excess of the policy coverage, the insurer's obligation to defend creates a conflict of interest on its part. On the one hand, its interests lie in minimizing the amount to be paid; on the other, the insured's interests, which the insurer is supposedly defending, lie in keeping recovery within policy limits, so that he will suffer no personal financial loss." 202 Kan. at 336.

To resolve that conflict of interest, *Bollinger* held that an insurer has two legal duties in handling claims against its insured: the duty to act with reasonable care and the duty to act in good faith. 202 Kan. at 332-33. An insurer breaching either duty may expose itself to liability beyond the policy limits in the insurance contract. 202 Kan. at 332-33. Since *Bollinger*, Kansas courts and federal courts applying Kansas law have continued to recognize these two, broad implied contractual duties set out in that decision. See, e.g., *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 845, 934 P.2d 65 (1997); *Castoreno v. Western Indemnity Co., Inc.*, 213 Kan. 103, 109, 515 P.2d 789 (1973); *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 660 (10th Cir. 2007); *Ins. Co. of North America v. Medical Protective Co.*, 768 F.2d 315, 321 (10th Cir. 1985).

That said, courts have not always described an insurer's implied contractual duties in broad terms, which has created some confusion here about whether insurers owe more

11

particularized, fact-specific duties. For example, in *Blann v. Rogers*, 22 F. Supp. 3d 1169, 1178-80 (D. Kan. 2014), a case that Granados frequently cited in the district court and the Court of Appeals, the United States District Court for the District of Kansas asserted that insurers owe four narrower implied contractual duties under the umbrella of good faith and reasonable care: (1) to investigate; (2) to evaluate and consider the interests of the insured; (3) to communicate with the insured; and (4) to negotiate settlement. The parties, panel, and amici have assumed that Kansas law recognizes such particularized duties, which has led them to analyze whether a yet narrower implied contractual duty exists: must an insurer explore settlement with an injured third party who has not yet sued or otherwise conveyed that they intend to pursue recovery from the insured? See *Granados*, 62 Kan. App. 2d at 39-49.

This framing of the issue reflects a recent tendency—which we noted in *Reardon v. King*, 310 Kan. 897, 904, 452 P.3d 849 (2019)—to characterize the legal duty in "ever narrower and more particularized ways." The problem with that approach is that "duty rules are not meant to be fact specific. Rather, they are to set broadly applicable guidelines for public behavior." 310 Kan. at 904 (citing Cardi, *Purging Foreseeability*, 58 Vand. L. Rev. 739, 754 [2005]). When duties are framed narrowly and in a particularized fashion, the element of legal duty is conflated with the element of breach. As a result, this narrow, fact-specific framing of the insurer's implied contractual duties invades the province of the fact-finder. 310 Kan. at 904-05.

The existence of a duty is a question of law, but whether specific conduct satisfies or breaches that duty is a question of fact. *Montgomery*, 311 Kan. at 655-56, 659. And our court has long recognized that the trier of fact must decide whether the specific conduct in any given case breaches a broadly applicable legal duty. See, e.g., *W. & W. Rld. Co. v. Davis*, 37 Kan. 743, 749, 16 P. 78 (1887) ("'The natural instinct of self-preservation ordinarily will lead to the employment of all the precaution[s] which the situation suggests to an individual; and whether they are such as would occur to or be

adopted by men of ordinary care and prudence, must necessarily, in most cases, be left to the jury. The intelligence and judgment, as well as the experience, of twelve [jurors], must settle a question of that character as one of fact, and not of law.'") (quoting *Weber v. Railroad Co.*, 58 N.Y. 451, 456 [1874]).

*Reardon* cautions against defining general legal duties in a more fact-specific, discrete manner in tort cases. And this rationale applies equally to Granados' breach of contract claims against Key in this garnishment action. Granted, a plaintiff seeking damages from an insurer based on its failure to act with reasonable care or in good faith must bring a breach-of-contract claim, not a tort claim, because an insurance policy is typically a contract. *Aves*, 258 Kan. at 511. And we have held that an insurer's broad legal duties to act with reasonable care and in good faith are implied contractual terms incorporated into liability insurance policies issued in our state. *Gilley v. Farmer*, 207 Kan. 536, 543, 485 P.2d 1284 (1971); *Glen v. Fleming*, 247 Kan. 296, 311, 799 P.2d 79 (1990). Even so, we apply tort concepts to evaluate whether an insurer has breached the implied contractual terms to act with reasonable care and in good faith. See *Glenn*, 247 Kan. at 313 ("We have adopted, in our development of the substantive case law, the principle that the insurer's duties are contractually based and then approved a tort standard of care for determining when the contract duty has been breached."). Thus, plaintiffs asserting such claims must prove four well-known elements: a duty owed to the plaintiff; a breach of that duty; causation between the breach of duty and the injury to the plaintiff; and damages suffered by the plaintiff. See *Shirley v. Glass*, 297 Kan. 888, 894, 308 P.3d 1 (2013) (setting out four elements of a negligence tort claim).

Because the existence of a legal duty is a question of law while breach, causation, and damages are questions of fact, the court's primary role in these cases is to articulate the legal duty the fact-finder must apply to the facts. *Reardon*, 310 Kan. at 903. *Bollinger* did just that and articulated two broad duties that an insurer owes when handling claims against the insured: reasonable care and good faith. 202 Kan. at 332-33. By defining

those duties broadly, *Bollinger* reserved the question of breach for the trier of fact to decide under the specific circumstances of each case. See 202 Kan. at 338 ("In the final analysis, the question of liability depends upon the circumstances of the particular case and must be determined by taking into account the various factors present, rather than on the basis of any general statement or definition.").

And to assist the trier of fact in that determination, *Bollinger* even identified several factors that may be relevant to the factual inquiry:

> "'[T]he following factors should be considered: (1) the strength of the injured claimant's case on the issues of liability and damages; (2) attempts by the insurer to induce the insured to contribute to a settlement; (3) failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; (4) the insurer's rejection of advice of its own attorney or agent; (5) failure of the insurer to inform the insured of a compromise offer; (6) the amount of financial risk to which each party is exposed in the event of a refusal to settle; (7) the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and (8) any other factors tending to establish or negate bad faith on the part of the insurer.'" 202 Kan. at 338 (quoting *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 689, 319 P.2d 69 [1957]).

Whether any of these factors have been established is, again, a question of fact reserved for the fact-finder. *Medical Protective Co.*, 768 F.2d at 321.

The bottom line is that under Kansas law, whether certain conduct satisfies or breaches the implied contractual duties of reasonable care and good faith is a question reserved for the trier of fact (usually a jury). And federal courts, relying on *Bollinger*, have also emphasized that point, though not always consistently. See *Wade*, 483 F.3d at 670 (applying *Bollinger* factors to assess whether evidence supported breach of legal duties); *Medical Protective Co.*, 768 F.2d at 321("[T]he question of liability depends

upon the circumstances of the particular case and must be determined by taking into account the various factors present, rather than on the basis of any general statement or definition."); but see *Blann*, 22 F. Supp. 3d at 1178 (applying particularized and discrete legal duties). With that framework in mind, we now turn to the panel's holding addressing an insurer's purported duty to settle.

III. *Because the Only Implied Contractual Duties Insurers Owe when Handling Claims Against the Insured Are the Broad Duties of Reasonable Care and Good Faith, the Panel Erred by Recognizing and Defining the Parameters of a Particularized Legal Duty to Settle with Third-Party Claimants*

Granados cross-appealed to the Court of Appeals on the issue of Key's purported legal duty to settle. She argued to the panel, as she had to the district court, that Kansas law imposes four specific duties on an insurer under the umbrella of reasonable care and good faith, including the legal duty to negotiate settlement. More specifically, Granados contended insurers have a legal duty to pursue settlement with an injured third party on behalf of the insured whenever liability is reasonably clear and damages exceed policy limits, even if the third party has yet to demand compensation.

After carefully reviewing the Kansas and federal cases Granados and Key cited, the panel affirmed the district court's ruling that Key did not have to initiate settlement negotiations under the circumstances. But the panel's holding was not limited to the specific circumstances of this case. Instead, the panel held, as a matter of law, that "an insurer owes no affirmative duty to initiate settlement negotiations with a third party before the third party makes a claim for damages." *Granados*, 62 Kan. App. 2d at 49.

Under the *Bollinger* framework discussed above, we conclude the panel committed legal error by defining the scope of a narrower, fact-specific legal duty to settle under the umbrella of reasonable care and good faith. Under Kansas law, when handling claims against the insured, an insurer has no implied contractual duty to settle.

15

Nor does it have implied contractual duties to investigate or to communicate with the insured, as Granados has suggested based on her reading of *Blann*. See 22 F. Supp. 3d at 1178 (identifying particularized and discrete legal duties of insurers).

Rather, our established precedent makes clear that insurers have an implied contractual duty to act with reasonable care and in good faith when handling claims against the insured. A failure to properly investigate or evaluate claims, communicate with the insured, or settle with the injured party may (or may not) breach those duties, just as other specific facts may (or may not) constitute a breach. But those are fact questions to be decided by the trier of fact under the many circumstances that may give rise to an excess-judgment claim against an insurer. See *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 228 Kan. 532, 539, 618 P.2d 1195 (1980) (under facts of the case, whether reasonable care and good faith required the insurer to settle was a question of fact for the jury to determine in an action brought for bad faith and negligence). All of which is to say, it is error to characterize an insurer's implied contractual duties more narrowly than pronounced in *Bollinger*.

We addressed a similar error in *Reardon*. There, the client of a trust company filed a negligence action against the company based on the conduct of one of its employees, a licensed attorney employed as a trust officer. Although company policy prohibited the employee from practicing law, the employee represented the client in legal matters during his employment. And, in his capacity as trust officer, the employee transferred funds from the client's trust account to pay his flat rate legal fee of $5,000 per month. The client's negligence action sought to impose direct liability on the trust company for breaching the common-law duty that employers owe to third parties who encounter their employees. At trial, the district court instructed the jury on several negligence theories, including negligent failure to supervise the employee and negligent failure to train the employee. These instructions defined the company's legal duty in a fact-specific,

16

particularized manner, and the articulation of the legal duty in these instructions was narrower than the general legal duty established at common law. The jury found the company liable for negligent training.

On appeal, we held the jury instructions had misstated Kansas law by recognizing "specific, discrete duties 'to train' and 'to supervise.'" *Reardon*, 310 Kan. at 904. "Employers in Kansas do not have a duty to third parties to train or to supervise their employees," we held. 310 Kan. at 904-05. Instead, they have a broad duty to use "reasonable care under the circumstances to prevent harm to third parties caused by its employees when those employees are acting within the scope of their employment." 310 Kan. at 904. Whether specific conduct relating to the training or supervision of an employee satisfies or breaches that broad duty is a question of fact properly reserved for the trier of fact. 310 Kan. at 904-05.

The same rationale applies here. *Bollinger* established that an insurer owes its insureds an implied contractual duty to act with reasonable care and in good faith when handling claims. The insurer does not have a specific, discrete legal duty to settle (or to investigate, evaluate, or communicate). An insurer's specific conduct surrounding settlement strategy may (or may not) breach the insurer's general legal duties, but that determination is for the fact-finder to make under all the circumstances of each case. By holding that insurers owe no legal duty to explore settlement with an injured third party before that person demands compensation, the panel effectively recast a question of fact into a question of law for the court to decide in every case. In doing so, the panel conflated the element of legal duty (a question of law) with the element of breach (a question of fact), thereby invading the traditional province of the fact-finder. See *Marshall v. Burger King Corporation*, 222 Ill. 2d 422, 443-44, 856 N.E.2d 1048 (2006) ("It is inadvisable for courts to conflate the concepts of duty and breach in this manner. Courts could, after all, 'state an infinite number of duties if they spoke in highly particular terms,' and while particularized statements of duty may be comprehensible, 'they use the

17

term duty to state conclusions about the facts of particular cases, not as a general standard.' 1 D. Dobbs, Torts § 226, at 577 [2001]. . . . Thus, the issue in this case is not whether defendants had a duty to install protective poles, or a duty to prevent a car from entering the restaurant, or some such other fact-specific formulation. Because of the special relationship between defendants and the decedent, they owed the decedent a duty of reasonable care. The issue is whether, in light of the particular circumstances of this case, defendants breached that duty.").

The panel here was not alone in that error. In *Roberts v. Printup*, 422 F.3d 1211, 1215-16 (10th Cir. 2005), a panel of the United States Court of Appeals for the Tenth Circuit reached a similar conclusion. *Printup* held that an insurance company owes no duty to initiate settlement negotiations prior to a claim being made. But that holding, like the holding of the panel here, is founded on the erroneous premise that Kansas law recognizes and incorporates more narrow, discrete, and fact-specific legal duties under the umbrella of good faith and reasonable care. *Printup*'s holding also improperly focused its inquiry on the conduct of the injured third party, rather than the conflict of interest between the insurer and the insured. See *Rector v. Husted*, 214 Kan. 230, 239, 519 P.2d 634 (1974) (whether an insurer's duties require an attempt to settle is not contingent on a claimant's offer to settle); *Bollinger*, 202 Kan. at 336. Whether the injured party has demanded compensation or filed a claim with the insurer may be a fact relevant to deciding whether the insurer breached its implied contractual duties of reasonable care and good faith. But that inquiry is reserved for the trier of fact.

Granted, if the duties of reasonable care and good faith do not, under any set of circumstances, require an insurer to explore settlement before a third-party files a claim or demands compensation, then a court could declare that principle as a matter of law. See *Deal v. Bowman*, 286 Kan. 853, 859, 188 P.3d 941 (2008) (breach becomes a legal

18

question for the court "'*when the facts are such that reasonable* [persons] *must draw the same conclusion*'"). But we hesitate to conclude that the implied contractual duties of reasonable care and good faith *never* require such conduct.

Take the following hypothetical scenario, for example. A company insures a driver involved in an automobile accident. And a third-party passenger who is related to the insured-driver is severely injured in the crash. The insured reports the loss under the notice-of-claim provision of the insurance policy, and the insurer's investigation reveals that the insured is at fault and the third party's damages clearly exceed policy limits. Moreover, based on the familial relationship with the injured third party, the insured knows the passenger plans to consult an attorney in three weeks. But the insured also knows the passenger would settle within policy limits before consulting the attorney because of an urgent financial obligation. And the insured shares this information with the insurer.

Under this hypothetical, both the insurer and insured know liability is clear and the claim filed by the insured exceeds policy limits, creating a conflict of interest that requires the insurer to exercise reasonable care and to act in good faith. See *Bollinger*, 202 Kan. at 336 (The rationale for the common-law duties of reasonable care and good faith is to address the conflict of interest that exists when a claim exceeds policy limits.). They also know the claim can be settled within policy limits if they act quickly, even though the third party has not made formal demand. We cannot conclude, as a matter of law, that the insurer could never breach the duties of reasonable care and good faith by failing to explore settlement under these (or any other possible set of) circumstances simply because the third party has not yet made a formal demand. See, e.g., Keeton and Widiss, Insurance Law § 7.8(c), 889-90 (1988) ("In most circumstances the insurer, having reserved to itself the right to control the defense and the decision

19

whether to agree to a settlement, should be obligated to explore the possibility of a settlement even in the absence of actions by the third-party or an express request by the insured.").

Even here, Wilson reported the accident to Key in compliance with the notice-of-claim provision in the contract of insurance. Based on that report, Key designated Granados as a claimant in its system and initiated its claim-handling procedures. Key conducted a liability review and determined Wilson was at fault and that damages would exceed policy limits. This conclusion suggests a conflict of interest existed between the parties, arising from Key's desire to minimize any payment under the policy of insurance and Wilson's desire to settle within policy limits.

As these examples show, whether an insurer has breached the implied contractual duties of reasonable care and good faith is a fact-intensive inquiry. We cannot conclude that in every case, regardless of the circumstances, the duties of reasonable care and good faith never require an insurer to explore settlement before the injured third party makes a formal demand for payment or otherwise pursues a claim. See Ostrager & Newman, *Handbook on Insurance Coverage Disputes*, § 12.05[b], at 979 (20th ed. 2020) (collecting cases explaining that "[w]hether an insurer has acted in bad faith in failing to settle is generally held to be a question of fact"). Thus, we hold the panel erred by defining, as a matter of law, the contours of an insurer's purported duty to settle.

IV. *Although the Panel Applied the Incorrect Legal Standard, We Need Not Remand the Matter for the Panel to Apply the Correct One*

In the previous section, we held the panel committed legal error by defining the contours of an insurer's discrete, fact-specific duty to settle with third-party claimants. Kansas law recognizes only the broad duties of reasonable care and good faith in this context, and it is error to try to define an insurer's implied contractual duties more

20

narrowly. When a lower court applies the wrong legal standard, we often remand for it to apply the correct one. See, e.g., *State v. Herring*, 312 Kan. 192, 202, 474 P.3d 285 (2020) ("We reverse the panel's decision and remand the case to the district court with directions to reassess the first *Edgar* factor under the lackluster advocacy standard . . . ."); *Littlejohn v. State*, 310 Kan. 439, 446, 447 P.3d 375 (2019) ("[T]he Court of Appeals applied the wrong standard in determining whether the district court erred in summarily denying Littlejohn's 60-1507 motion as being an abuse of remedy. . . . We remand to the Court of Appeals to apply the correct standard.").

But remand is not required here for two reasons. First, the district court did not conflate the factual question of breach with the legal question of duty. Instead, it held Key to the general implied contractual duties established in *Bollinger*—reasonable care and good faith. The district court found that Key did *not* breach its duty of reasonable care or good faith under the circumstances by failing to begin settlement discussions with Granados. And this finding is supported by substantial competent evidence. Second, although the district court found that Key breached its implied contractual duty of reasonable care and good faith by failing to communicate with Wilson, Granados failed to prove this omission caused the excess judgment. And the district court's causation findings to the contrary are *not* supported by substantial competent evidence. We address these points in turn.

A. *The District Court's Ruling Did Not Conflate the Question of Duty with the Question of Breach*

Granados' framing of her claim in the district court conflated the factual question of breach with the legal question of duty. Even so, a careful reading of the district court's rulings on summary judgment and at trial confirms it did not do the same.

21

In ruling on the cross motions for summary judgment from the bench, the district court identified the legal duties implicit in Kansas liability insurance contracts, explaining that "in all cases that arise under contract of insurance" an insurer owes the insured a "good faith duty, a reasonable man standard, a requirement that one acts in such a manner to protect the interest of the insured." The court then made findings about the breach of these implied contractual duties of reasonable care and good faith. It found Granados' evidence created a genuine issue of material fact as to whether good faith and reasonable care required Key to investigate and evaluate the claim and communicate the risks of an excess judgment to Wilson. But the district court also found that reasonable care and good faith did not require Key to settle with Granados under the circumstances.

But ambiguity remained after summary judgment. Although the district court's bench ruling seemed to foreclose Granados' "failure to settle" claim, the journal entry merely denied both parties' motions for summary judgment. If the district court had dismissed that theory of liability against Key, it should have granted Key's summary judgment motion, in part, and denied it, in part. Thus, it is unclear whether the district court made a definitive ruling at summary judgment on Key's "failure to initiate settlement" theory of liability.

After the bench trial, the district court again made findings from the bench related to Granados' "failure to initiate settlement" theory. The court found Key did not contact Granados to explore settlement because it believed she, like many other potential claimants, would never pursue recovery. While such a practice "might turn some people's stomach," the district court found it was "a magnificent strategy" and "sound business judgment." Based on these findings, the district court concluded Key did not breach the duty of reasonable care or good faith by failing to settle with Granados.

22

Neither party challenges these factual findings on appeal. See *Montgomery*, 311 Kan. at 655-56 (breach of duty is a question of fact). And they are supported by substantial competent evidence. Key's employee testified that many injured parties never pursue recovery and 66% of potential bodily injury claimants never receive any payment under the insurance policy. And Key had no evidence suggesting Granados intended to pursue a claim. In short, the district court identified and held Key to the implied contractual duties established in *Bollinger*. And it made findings of fact supporting its conclusion that Key did not breach the duty of reasonable care or act in bad faith by failing to explore settlement here. Thus, despite the panel's legal error, Granados is not entitled to judgment on its "failure to settle" theory for the reasons set forth in the district court's *uncontested* findings, which supported its conclusion that Key did not breach any legal duty by failing to initiate settlement under the circumstances.

B. *Substantial Competent Evidence Does Not Support the District Court's Finding of Causation*

To prevail on her claim against Key, Granados had to prove a causal link between the insurer's conduct and the excess judgment. See *Hawkins v. Dennis*, 258 Kan. 329, 347, 905 P.2d 678 (1995); *Gruber v. Estate of Marshall*, 59 Kan. App. 2d 297, 315, 482 P.3d 612 (2021), *rev. denied* 313 Kan. 1040 (2021). In this garnishment action, Granados stands in the shoes of Wilson. See *Geer*, 309 Kan. at 191. Thus, Granados had the burden to prove by a preponderance of evidence that Key's breach of its implied contractual duties was the proximate cause of the excess judgment against Wilson. See *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 788, 450 P.3d 330 (2019) (noting that in any negligence action, the plaintiff must prove causation by a preponderance of the evidence).

> "There are two components of proximate cause: causation in fact and legal causation. To establish causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury can conclude that more likely than not, but for defendant's

23

conduct, the plaintiff's injuries would not have occurred. To prove legal causation, the plaintiff must show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable." *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015).

The district court found Key had breached its implied contractual duties only by failing to advise Wilson of the risks and consequences of a judgment exceeding the policy limits. And because the district court granted judgment for Granados, it necessarily (though implicitly) found Key's failure to communicate with Wilson had caused the excess judgment against him. See *In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 1108, 442 P.3d 457 (2019) ("When no objection is made, this court presumes the district court found all facts necessary to support its judgment.").

Causation is a question of fact. *Montgomery*, 311 Kan. at 659. And under our standard of review, we defer to the district court's causation findings if they are supported by substantial competent evidence. See *Geer*, 309 Kan. at 190-91. When making that determination, an appellate court must not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 309 Kan. at 191.

Based on our review of the record, we hold that the district court's causation findings are not supported by substantial competent evidence. To establish causation, Granados had to show that, but for Key's failure to communicate with Wilson, a judgment exceeding policy limits would not have been entered against him. *Drouhard-Nordhus*, 301 Kan. at 623.

At trial, Granados testified that she would have settled within policy limits had Key made such an offer before she hired a lawyer and filed her wrongful death action against Wilson. The district court found Granados' testimony credible, and we defer to this credibility determination on appeal.

But there is no evidence to suggest Key would have settled with Granados but for its failure to advise Wilson that he was personally obligated to pay any judgment exceeding policy limits. Neither party presented testimony from Wilson or his personal representative at trial. Thus, we simply do not know how Wilson would have responded if Key had advised him of this potential excess judgment liability. There is no evidence Wilson would have instructed Key to contact Granados to negotiate a settlement within policy limits. We acknowledge that it is possible, perhaps even likely, Wilson would have insisted on a pre-suit settlement, but that conclusion requires speculation and has no evidentiary basis in the record. Nor is there any evidence suggesting Key had to heed such an instruction or directive from Wilson. Likewise, there is no evidence that Wilson, upon being informed of his potential exposure, would have engaged independent, conflict-free counsel to negotiate a pre-suit settlement within policy limits. Thus, Granados failed to establish causation, and the district court findings to the contrary are not supported by substantial competent evidence.

The Court of Appeals panel likewise concluded that Granados failed to establish causation. While we agree with the panel's conclusion, we depart from its reasoning. Rather than review the district court's finding for substantial competent evidence, as the standard of review demands, the panel found that "the record reflects that the excess judgment was more the result of [Granados'] actions after the lawsuit was filed, rather than Key's conduct before the lawsuit was filed." *Granados*, 62 Kan. App. 2d at 39. And in reaching that conclusion, the panel discounted Granados' testimony, finding that her "argument that she reasonably rejected the post-suit policy-limit settlement offer because of the fees she incurred by filing the lawsuit is unpersuasive." 62 Kan. App. 2d at 37. The panel's reasoning does not follow our well-established standard of review. When an appellate court reviews a district court's findings of fact, it must not substitute its own

25

judgment of the facts and assessment of witness credibility for that of the district court, even when it reasonably finds witness testimony "unpersuasive." See *Khalil-Alsalaami v. State*, 313 Kan. 472, 476, 486 P.3d 1216 (2021).

Even so, we may affirm the decision of a Court of Appeals panel when we agree with its conclusion but depart from its reasoning. See *State v. Williams*, 311 Kan. 88, 91, 456 P.3d 540 (2020) (affirming Court of Appeals as right for the wrong reason). Here, we disagree with the panel's reasoning because it deviates from the applicable standard of review. But we agree with the panel's conclusion because Granados failed to carry her burden to prove causation and the district court's findings to the contrary are not supported by substantial competent evidence.

Thus, we affirm the panel's decision to reverse the judgment for Granados and remand the matter to the district court with instructions to enter judgment for Key. See *State v. Dailey*, 314 Kan. 276, 279, 497 P.3d 1153 (2021) (holding that party bearing the burden of production and persuasion not entitled to remand for new trial after failing to sustain its burden of proof—"its case should ordinarily have to stand or fall on the record it makes the first time around") (quoting *United States v. Dickler*, 64 F.3d 818, 832 [3d Cir. 1995]).

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

BILES, J., not participating.

26